IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mary L. Mizzell, ) | C/A No. 0:12-3126-MGL-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Mary L. Mizzell ("Mizzell"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be remanded for further proceedings.

**ADMINISTRATIVE PROCEEDINGS**

In June 2008, Mizzell applied for DIB and SSI, alleging disability beginning November 22, 2003. Mizzell's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on July 15, 2010, at which Mizzell, who was represented by James Callahan, Esquire, appeared and testified. The ALJ issued

___

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



a decision on August 24, 2010 denying benefits and concluding that Mizzell was not disabled. (Tr. 21-32.)

Mizzell was born in 1965 and was forty-one years old at the time of her amended alleged disability onset date. She has a limited education and past relevant work experience as a housekeeper. (Tr. 179.) Mizzell alleged disability since November 22, 2003[2] due to depression, bipolar disorder, sciatica, and numbness in her right leg. (Tr. 178.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2008.

2. The claimant has not engaged in substantial gainful activity since January 1, 2007, the amended alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).
   \* \* \*
4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
   \* \* \*
5. . . . [T]he claimant has the residual functional capacity to perform light work[] as defined in 20 CFR 404.1567(a) and 416.967(a).[3] The claimant is limited to the performance of simple, routine, repetitive tasks.
   \* \* \*
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
   \* \* \*

---

[2] Mizzell amended her alleged disability onset date to January 1, 2007 at the hearing before the ALJ.

[3] Although the ALJ references subsection (a) for light work, this appears to be a typographical error. Subsection (a) describes sedentary work, while subsection (b) describes light work.



7. The claimant was born . . . [in] 1965, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 23-32.) The Appeals Council denied Mizzell's request for review on August 27, 2012, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;


    (2)      whether the claimant has a "severe" impairment;

    (3)      whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4)      whether the claimant can perform her past relevant work; and

    (5)      whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[4] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[4] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Mizzell raises the following issues for this judicial review:

I.  The ALJ's unfavorable decision is inconsistent with the Commissioner's subsequent determination that Plaintiff was disabled less than four weeks after the decision, based on the Commissioner's own medical expert's finding that Plaintiff actually became disabled long before the ALJ's decision.

II. It was error for the ALJ to fail to find that lower GI/abdominal problems, shortness of breath, and limited cognitive ability were "severe impairments."

III. It was error for the ALJ to promulgate an incomplete "residual functional capacity" (RFC) that improperly failed to accommodate all of Claimant's physical and mental limitations supported by the evidence.



    IV.    The ALJ committed reversible error by relying solely on the grid rules to deny the claim at step 5, without any testimony by a vocational expert, even though the Claimant is severely impaired by both exertional and non-exertional limitations.

(Pl.'s Br., ECF No. 20.)

## DISCUSSION

Mizzell presents several issues on appeal. For the reasons that follow, the court agrees that the ALJ's determination at Step Two of the sequential process is unsupported by substantial evidence, which impacts the remaining steps of the sequential process. Therefore, the court addresses this issue first.

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant bears the burden at this step to show that she has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

    (1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
    (2)    Capacities for seeing, hearing, and speaking;
    (3)    Understanding, carrying out, and remembering simple instructions;
    (4)    Use of judgment;
    (5)    Responding appropriately to supervision, co-workers and usual work situations; and
    (6)    Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be



expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

At Step Two, the ALJ found that Mizzell's degenerative disc disease, depression, and anxiety constituted severe impairments. The ALJ also considered the following impairments and found them to be non-severe: hypertension; shortness of breath; chest pain; gastroesophageal reflux disease ("GERD"), gastrointestinal symptoms (abdominal pain, nausea, vomiting, constipation, and diarrhea) due to irritable bowel syndrome, Oddi dysfunction, and status post sphincterotomy, and pancreatic stent placement; right shoulder pain; right knee pain; and limited cognitive functioning. Mizzell argues that the ALJ erred in determining that several of her impairments constituted "non-severe" impairments rather than "severe" impairments. Specifically, Mizzell argues that the ALJ erred in failing to find her lower gastrointestinal problems (irritable bowel syndrome, sphincter of Oddi dysfunction, and GERD); shortness of breath/COPD and heart problems; and limited cognitive abilities were severe impairments.

In finding that Mizzell's shortness of breath was a non-severe impairment, the ALJ observed that "[e]xaminations in January 2009, July 2009, August 2009, December 2009, March 2010, May 2009, and June 2009 indicated no cardiac or respiratory abnormalities with regular heart rate and rhythm and lungs clear to auscultation." (Tr. 23.) The ALJ also found that "chest x-rays in August 2007 and January 2009 were normal," "a cardiac catheterization in February 2009 showed normal findings," and "an echocardiogram in August 2009 was normal with an ejection fraction of 50-60%." (Tr. 23-24.) Finally, the ALJ observed that Mizzell's oxygen saturation rate was at ninety-nine percent in February 2010 and April 2010 and ninety-five percent in May 2010 and that

notwithstanding her alleged respiratory issues, Mizzell continued to smoke despite numerous recommendations of smoking cessation. With regard to her lower gastrointestinal problems, the ALJ found that "the record does not establish that any of the conditions imposed more than minimal work-related functional limitations at any time relevant to this decision and, therefore, represented non-severe impairments." (Tr. 24.) Finally, the ALJ determined that Mizzell's cognitive functioning impairment was non-severe as it had no more than minimal effect on her ability to perform work-related activities. Although a consultative psychological examination prior to the amended alleged onset date revealed IQ scores between 61 and 65, the ALJ determined that the scores were not valid estimates of her intellectual functioning "because the claimant was groggy at the time of the consultative evaluation." (Id.) The ALJ also found that Dr. Ray Hodges indicated Mizzell's intellectual functioning to be in the average range in September 2007.

In support of her allegations of error, Mizzell points to numerous records during and around the relevant time period concerning the impairments as issue that would arguably demonstrate that the impairments significantly limit her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). For example, Mizzell cites numerous records supporting her position that her gastrointestinal problems are more than a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans, 734 F.2d at 1014 (emphasis deleted); (see Pl.'s Br. at 24-27, ECF No. 20 at 24-27) (summarizing medical records involving Mizzell's gastrointestinal problems from August 2007 through May 2010). However, the ALJ's opinion simply states that "the record does not establish that any of the conditions imposed more than minimal work-related functional limitations at any time relevant to this decision and,

therefore, represented non-severe impairments." (Tr. 24.) Moreover, the remainder of the decision does not appear to discuss this impairment or its possible limitations. Additionally, Mizzell argues that the ALJ's determination that her cognitive functioning impairment had no more than minimal effect on her ability to perform work-related activities is unsupported because although the consultative examiner observed that Mizzell was groggy and passive in the examination, the consultative examiner accounted for that in his opinion. Dr. Harwood stated that because of the discrepancies and Mizzell's grogginess and passivity, he diagnosed Mizzell with Borderline Intellectual Functioning rather than Mild Mental Retardation. He further indicated that she was functioning at a very poor level, and noted that she was functioning at a significantly higher level two years ago. The ALJ offers no explanation for rejecting Dr. Harwood's other findings, and in fact does not even acknowledge them.

Therefore, the court is constrained to recommend that this matter should be remanded for further consideration of Mizzell's impairments at Step Two and their impacts of the remaining sequential process. Furthermore, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address Mizzell's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Mizzell may present her arguments on remand regarding the additional evidence, the ALJ's residual functional capacity analysis, and the propriety of the ALJ's reliance on the Grids.

**RECOMMENDATION**

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above. In light of this recommendation, the court recommends that Mizzell's motion to consider additional evidence be dismissed as moot. On remand, if Mizzell seeks further consideration of the additional evidence, the Commissioner may determine in the first instance whether it is appropriate.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 24, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).